IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GEORGENE SWAN,

        Plaintiff,

        vs.                       Case No. 12-1366-JTM

CAROLYN COLVIN, Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

Plaintiff Georgene Swan has applied for Social Security disability and supplemental security income benefits. Her application was denied by the Administrative Law Judge (ALJ) on May 6, 2011. The Appeals Council declined Swan's request for review on August 2, 2002. There are three allegations of error by Swan. First, she alleges the ALJ erred in finding, at step 5 of the sequential analysis, that there were jobs which she could perform. Second, she alleges that the ALJ erred in determining her residual functional capacity (RFC). Third, she alleges that the ALJ erred in determining that she had limited credibility.

Plaintiff-claimant Swan was born on December 16, 1962. She has stated that she became disabled beginning September 9, 2009. Swan has a high school education, and has previously worked as a security guard, data-entry clerk, and laborer. She has cited a variety

of ailments, including deafness in one ear, depression, diabetes, problems with her left foot, pain in her back and wrist, and complications from a stroke suffered in 2008. The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Dkt. 10-2, Tr.13-24), and the brief of Swan (Dkt. 12, at 2-8), and set forth seriatim in the argument section of the Commissioner's response (Dkt. 17, at 3-10).

The ALJ found that Swan was severely impaired by hearing loss in her left ear, carpal tunnel syndrome, major depressive disorder, posttraumatic stress disorder (PTSD), and personality disorder. She determined, however, that these impairments did not, by themselves or in combination, meet or exceed any listed impairment under 20 C.F.R. part 404, subpart P. appendix 1. Swan thus retained the ability to work at all exertional levels, but she should avoid jobs which require bilateral hearing, unprotected heights, dangerous moving machinery, or exposure to loud noises.

In addition, Swan should have only occasional handling. The ALJ determined Swan was moderately limited in the ability to understand, remember and carry out detailed instructions and interact appropriately with the general public. She should be able to remember, understand and follow simple details; sustain attention in an average 8-hour workday; accept direction from a supervisor; and interact appropriately with others. (Tr. 18-19).

The Commissioner determines whether an applicant is disabled pursuant to a five-step sequential evaluation process (SEP) pursuant to 20 C.F.R. §§ 404.1520 and 416.920. The applicant has the initial burden of proof in the first three steps: she must show that she

is engaged in substantial gainful activity, that she has a medically-determinable, severe ailment, and whether that impairment matches one of the listed impairments of 20 C.F.R. pt. 404, subpt P., app. 1. *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). If a claimant shows that she cannot return to her former work, the Commissioner has the burden of showing that she can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f). *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

The court's review of the Commissioner's decision is governed by 42 U.S.C. 405(g) of the Social Security Act. Under the statute, the Commissioner's decision will be upheld so long as it applies the "correct legal standard," and is supported by "substantial evidence" of the record as a whole. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

Substantial evidence means more than a scintilla, but less than a preponderance. It is satisfied by evidence that a reasonable mind might accept to support the conclusion. The question of whether substantial evidence supports the Commissioner's decision is not a mere quantitative exercise; evidence is not substantial if it is overwhelmed by other evidence, or in reality is a mere conclusion. *Ray*, 865 F.2d at 224. The court must scrutinize the whole record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

This deferential review is limited to factual determinations; it does not apply to the Commissioner's conclusions of law. Applying an incorrect legal standard, or providing the court with an insufficient basis to determine that correct legal principles were applied, is grounds for reversal. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

The court finds no error in the ALJ's determination that Swan could perform a significant number of jobs in the national economy. Given her RFC, Swan cannot perform skilled or active work. (Tr. 24). She retains the ability, however, to perform roughly 75% of unskilled, sedentary jobs, including that of stuffer (DOT 731.685-014). These conclusions were grounded on the testimony of a vocational expert, and contrary to the argument of the plaintiff in the present appeal, the court finds no grounds for rejecting either the testimony or the resulting conclusions.

Specifically, the plaintiff argues that there is a conflict because the DOT indicates that stuffers require frequent handling, while her RFC restricts her to only occasional handling. This court has recognized, however, that "' DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range.'" *Thongleuth v. Astrue*, 2011 WL 1303374, *18 (D. Kan. 2011) (quoting *Page v. Astrue*, 484 F.3d 1040, 1045 (8th Cir.2007)). Here, the DOT does not explicitly require frequent handling for all persons in the position of stuffer, providing that in some cases such positions can be performed using only occasional handling.

Here, the ALJ explicitly directed the vocational expert to Swan's respective RFC and her restriction to "occasional handling." The vocational expert agreed that the need to "frequently handle" would preclude Swan's past work, but "that stuffer job would remain." (Tr. 49-50). The vocational expert determined that there were no conflicts between his testimony and the DOT, except that the DOT did not have explicit requirements for bilateral hearing, or the need for an ability to lie down. The expert testified that as to the

4

stuffer job, "those are additional things that I know from my 20 years experience of providing ergonomic job placement, other on the job services." (Tr. 50). Further, in addition to the stuffer job, the expert also testified that Swan's restrictions would preclude her from only some 25% of sedentary unskilled positions, and that some 75% of the jobs would remain within Swan's RFC. (Tr. 48-49). Pursuant to 20 C.F.R. Pt. 404, Subpt. P, App.2 § 2001.00(a), there are approximately 200 unskilled jobs in the sedentary job base.

Next, the plaintiff argues that the ALJ erred in assessing her RFC because it was not adequately grounded in the evidence in light of her obesity, and because it is not grounded in or linked with the medical evidence in the record.

The plaintiff has not demonstrated any error by the ALJ. The ALJ's opinion carefully explained her conclusions in light of all the medical evidence in the record. (Tr. 19-22). Swan presented no medical evidence from treating medical sources. The ALJ's narrative of the record gives substantial weight to the reports from Dr. Molly Allen (Psy.D.) and Dr. David Hackney (Ph.D.), which were both found to be well-supported and consistent with the record as a whole. Dr. Allen concluded that Swan should be able to understand and carry out simple instructions, get along with her coworkers and take directions from supervisors. Despite potential difficulties with attention and persistence, she should also be adapt to the demands of a typical work environment. Dr. Hackney believes Swan can do simple tasks in an average amount of time; maintain her concentration over the work day, and meet a work schedule with average performance demands. (Tr. 21). These conclusions support the RFC adopted by the ALJ. These substantive and considered

evaluations provide substantial evidence for the ALJ's decision. Further, the ALJ incorporated into the RFC the hearing and wrist difficulties described by the plaintiff.

Swan also argues that the ALJ erred because she failed to explicitly address the symptoms which "can be expected to accompany obesity." (App.Br. at 13). But the existence of any such additional symptoms in the present action is simple speculation. Here, the ALJ noted Swan's weight and explicitly agreed that such an individual could have various limitations associated with that condition. However, she found, the evidence failed to show any functional limitation due to her obesity. (Tr. 16).

Swan has failed to point to any medical source evidence which would support a determination that her obesity justified additional restrictions. The plaintiff has failed to demonstrate the existence of any obesity-related impairments which were not reflected in the RFC. *See Arles v. Astrue*, 438 F3d.Appx. 735, 740 (10th Cir. 2011) (ALJ adequately discussed effect of obesity, and plaintiff failed to show any additional limitations); *Runyan v. Astrue*, No. 10-2440-JTM 2011 WL 2038694, *5 (D.Kan. May 25, 2011) (no error where ALJ rested decision on all of the evidence, and plaintiff failed to provide evidence of additional impairments related to obesity).

Finally the court finds that the ALJ did not err in her credibility assessment. The ALJ determined that Swan was not fully credible, based on her review of the record as a whole. Swan has had profound hearing loss in her left ear since birth. However, as the ALJ noted, Swan frequently claimed to various therapists and consultants that she also suffered increasing hearing loss in her right ear. Thus, she reported to Dr. Donald James on

6

February 23, 2010, that in addition to her left ear, she could barely hear out of the other."

(Tr. 619). Asked about her right hear at the ALJ hearing, Swan testified that it was "going down. I've had it tested and they said it's going down." (Tr. 43).

As the ALJ noted, the medical sources (including Dr. James) indicated in their notes that they had no difficulty in conversing with Swan (Tr. 19). Dr. James reported that Swan could "function well in society with a slight modification of her head positioning," and that she was not disabled "in terms of her overall hearing." (Tr. 22, 619).

The ALJ further noted that, while Swan reported substantial carpal tunnel difficulties, an examination by Dr. Sitha Miller found full range of motion in both wrists. While Swan later claimed difficulties with PTSD and depression, the ALJ noted that contemporaneous treatment notes from 2009 failed to indicate any similar complaints, and that Swan in fact appeared to be functioning very well. (Tr. 20).

Further, Swan did not attempt to continue recommended treatments for PTSD or depression. In addition, while Swan asserted that she suffered from chronic back pain, the medical record shows

> little, if any evidence that the claimant has reported to any medical provider such chronic back pain. There is certainly no evidence the claimant has informed any medical provider that she has to lie down almost the entire day. As was discussed above, there is no evidence that the claimant has a medically determinable back impairment. Upon examination, the claimant exhibited full range of motion of all joints. Straight leg raising was negative bilaterally; there was no evidence of muscle spasm; motor and sensory function was intact and reflexes were symmetrical.

(Tr. 21-22). In addition, the ALJ observed that Swan's statement of her mental impairments,

7

such that she cannot do anything for ten to fifteen days a month when she has "bad days," conflicted with evidence showing and lack of attempts to obtain subsequent mental health treatment, and the indication that Swan was "doing well" at the time she stopped going to treatment. Finally, the ALJ found that Swan's motivation to work was subject to doubt, given her repeated comments to different medical sources that she anxious while she was "waiting on her disability." (Tr. 565, 570, 575, 576, 584, 597). The ALJ's assessment of the plaintiff's focus on disability benefits (Tr. 22) is a fair assessment of the record.

The ALJ did not err in discounting Swan's subjective complaints of pain. The assessment of a claimant's credibility is for the ALJ. *Hamilton v. Secretary of HHS*, 961 F.2d 1495, 1499 (10th Cir. 1992). This court will not substitute its judgment as to a claimant's credibility, where that finding is founded on substantial evidence. *See Casias v. Secretary of HHS*, 933 F.3d 799 (10th Cir. 1991).

IT IS ACCORDINGLY ORDERED this 24th day of February, 2014, that the present appeal is hereby denied, and the decision of the Commissioner is AFFIRMED.

 s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE